IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN LITTLE** and **MICHELLE LITTLE,** | : | Civil No. 1:19-CV-1485 |
| | : | |
| Plaintiffs, | : | (Judge Wilson) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **BETHANY CHRISTIAN SERVICES,** | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM AND ORDER

### I.  Introduction

This case comes before us for resolution of a discovery dispute which is embodied in the plaintiffs' Motion for Sanctions and Motion to Compel Defendant to Produce Documents Pursuant to FRCP 11(c) and FRCP 37(a) and (e). (Doc. 61). By way of background, the plaintiffs, Shawn and Michelle Little, brought this action in state court against the defendant, Bethany Christian Services ("Bethany"), alleging that the defendant breached a contract to provide adoption services to the plaintiffs, resulting in a disrupted adoption after which the plaintiffs were required to give up of a child after raising her for almost two years.

After a lengthy discovery period, the plaintiffs have filed the instant motion alleging that the defendant made incomplete disclosures, improperly disposed of

requested evidence, and engaged in dilatory and bad faith delays during the discovery process. They also request that the defendant be sanctioned for making statements in its Motion for Summary Judgment that they believe were not supported by the evidence. The plaintiffs request reasonable attorneys' fees and expenses for the cost of pursuing discovery responses and request we compel the defendants to produce an electronic document which the defendants assert no longer exists.

For the reasons that follow, the plaintiff's motion will be denied, in part, and deferred, in part. Specifically, while we decline to order the production of evidence which all parties attest no longer exists, and deem a request for monetary sanctions to be premature, we recognize that some potentially critical electronically stored evidence may not have been preserved by the defendants despite arguably having a legal duty to retain this information. Therefore, we will defer to the judgment of the trial judge regarding whether some form of spoliation jury instruction would be an appropriate sanction in this case.

## II. **Procedural History**[1]

The procedural history reveals an uneven and halting discovery period, in part due to the litigation commencing shortly before the COVID-19 Pandemic. In fact, the parties entered into discovery just three days prior to Governor Wolf's business

---

[1] This procedural history is taken from the parties' submissions to the extent those submissions are supported by the record. (Docs. 63, 67, 68).

closures on March 19, 2020. The parties initially consented to an extension of the discovery deadline on April 24, 2020, extending it to October 31, 2020.[2] Thereafter, the plaintiffs served their first set of interrogatories, requests for production, and requests for admissions on September 9, 2020, giving the defendants 30 days to respond. The defendant responded on October 28, 2020, when it provided a two-page response to the request for admissions. The parties also agreed to a second extension of discovery deadlines.

On November 6, 2020, the plaintiffs served a second set of requests for production of documents on the defendant. The plaintiffs allege they followed up on the two requests for documents on November 11th, November 30th, December 10th, and December 17th, only receiving a response after their December 17th email indicating they would be provided shortly.[3] The defendant subsequently provided the requested documents in a series of sixteen emails, which the plaintiffs allege were not Bates Stamped and were incomplete. Meanwhile, the plaintiffs submitted a third and fourth Consent Motion to extend the discovery period.

---

[2] Over the course of the two years of litigation, the parties have consented to nine extensions of time to file dispositive motions. (See Doc. 49).

[3] For their part, the defendant's brief also details a lack of response from the plaintiffs as to several discovery attempts, necessitating several follow-up emails. (See Doc. 67, at 2).

On February 9th, 2021, the plaintiffs requested formal written responses to the interrogatories and requests for production of documents. The defendant responded indicating the reason for their informal response was so that the plaintiffs could start reviewing the information but that they were working on a formal response. The plaintiffs followed up on March 22nd and received a response from the defendants one week later indicating the formal responses were completed and forthcoming by April 1st. The responses were received by the plaintiffs on April 9th, along with additional policy documents which it was later discovered were not those in place at the time of the adoption. The correct policy documents were provided on May 19th.

The plaintiffs also discovered, when reviewing the documents, that certain files from Bethany's communication portal had not been turned over. According to the plaintiffs, "the portal is an internal note keeping and communication system at Bethany Christian Services to facilitate adoptions, and which reference documents relevant to this matter, but not previously produced." (Doc. 63, at 7 n.2). They noted that the portal records contained notations such as .jpeg image files, internal web link destinations, .doc and .pdf attachments that indicated there were other documents that were relevant to the portal information that had not been provided. The plaintiffs provided a list of the missing items on May 17th, 2021.

The plaintiffs and defendant were in communication about the missing documents over the next several months with the defendant asking several times

what documents the plaintiffs needed and the discovery deadlines being extended again. The defendants assert that a good faith effort was made to produce the requested documents after the parties came to a mutual realization that certain referenced items in the file were not also printed out. (Doc. 67, at 3). The plaintiffs believe the missing information was apparent by notations in the portal, but nonetheless provided a final list on September 16th, 2021. The defendant finally provided all but two documents on October 4th, 2021. The proceedings were then halted pending the disposition of the cross motions for summary judgment which we recommended be denied on April 6th, 2022. (Doc. 60). Following a case management conference, the defendants were ordered to produce the two remaining documents prior to April 13th, 2022. The defendant produced one of the documents on April 12th along with an affidavit claiming that the other document no longer existed.

The plaintiffs then filed this motion to compel and for sanctions on April 19th, 2022. The motion is fully briefed and is, therefore, ripe for resolution. Upon consideration of the parties' positions, for the reasons set forth below, we will DENY these discovery motions.

### III. Discussion

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery....

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, will be disturbed

only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). Likewise, discovery sanction decisions rest in the sound discretion of the court. Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 134 (3d Cir. 2009).This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter ..., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D. Pa. 1996) ). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. For example, Rule 37 of the Federal Rules of Civil Procedure provides that: "If a party.... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," and specifies an array of available sanctions. Fed. R. Civ. P. 37(b)(2)(A). In addition to

these specifically identified sanctions, the rule also provides that, "[i]nstead of or in addition to these sanctions, the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3)(emphasis added). Likewise Rule 37(a)(5) calls for payment of attorney's fees relating to compelled discovery practice, and provides that the party whose non-disclosure or incomplete disclosure required litigation of a motion to compel:

> [M]ust ... pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
> **(iii)** other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5).

Thus, by its terms, Rule 37 seems to call for the imposition of attorney's fees in discovery litigation, unless the position of the party who failed to make discovery was "substantially justified." Therefore, as a threshold matter in ruling on this sanctions matter, we must make a determination regarding: (1) whether there was a failure of discovery; and (2) whether the conduct of a party that is alleged to have failed in some discovery obligation was substantially justified.

Our analysis is also guided by the legal principles governing Rule 11 sanctions litigation. By its terms, Rule 11 imposes an obligation upon litigants to refrain from frivolous and vexatious litigation, and specifically provides that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Having imposed this duty of forthrightness, candor, and good faith upon litigants, Rule 11(c) then provides for sanctions against parties who indulge in baseless and frivolous litigation, stating that:

> **(c) Sanctions.**
>
> **(1)** *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

9

> **(2)** *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.
>
> ----------------------------------------------------------------------
>
> **(4)** *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c).

In determining whether to impose Rule 11 sanctions in a given case, we are cautioned that:

> The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions 1) are "in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes," Eastway Construction Corp. v. City of New York, 637 F.Supp. 558, 564 (E.D.N.Y. 1986), modified and remanded, 821 F.2d 121 (2d Cir.), cert. denied 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); 2) tend to "spawn satellite litigation counter-productive to efficient disposition of cases," Gaiardo, 835 F.2d at 482; and 3) "increase tensions among the litigating bar and between [the] bench and [the] bar." Eastway Construction Corp., 637 F.Supp. at 564. This Court and others have interpreted its language to prescribe sanctions, including fees, only in the "exceptional circumstance", Gaiardo, 835 F.2d at 483, where a claim or motion is patently unmeritorious or frivolous. See, e.g., Lieb v. Topstone Industries, Inc., 788 F.2d 151, 157 (3d Cir. 1986) ("Rule 11 therefore is intended to discourage pleadings that are

> 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'") (quoting Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986)); Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986) ("[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'") (quoting Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985)), cert. denied sub nom. County of Suffolk v. Graseck, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988). "Moreover, the guiding purpose in fixing Rule 11 sanctions is fashioning a sanction adequate to deter undesirable future conduct." DiPaolo v. Moran, 407 F.3d 140, 146 (3d Cir. 2005). Therefore, when considering a sanctions motion, it is clear that "the main purpose of Rule 11 is to deter, not to compensate." Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania, 103 F.3d 294, 301 (3d Cir. 1996). Further, '[t]he language of Rule 11 evidences the critical role of judicial discretion' in making sanctions determination. DiPaolo, 407 F.3d at 145. This discretion extends both to the decision to impose sanctions, and the determination of what an appropriate sanction may be. Id.

Turning to the instant motion to compel, the plaintiffs have requested certain electronic records that were missing from a request for the complete communication records from Bethany's adoption portal. Specifically, they believe the missing file was a record of the correspondence between the Littles and Bethany which the plaintiffs allege would be material as to the plaintiff's concern regarding the

11

circumstances surrounding notification of the Birth Father and his location. In response to the plaintiff's request for the electronic record, the defendant stated, "This appears to be a link to a family portal message from the family however our IT department is not able to retrieve this link. According to IT, audit logs are purged every 4 years." (Doc. 63, at 15). Thus, it appears the record which the plaintiffs urge us to compel the defendant to produce no longer exists. This we cannot do. Nonetheless, the destruction of the portal communication, which it appears that defendants may have had a statutory duty to retain, may give rise to a spoliation inference. As that is an evidentiary issue for trial which should be left to the judgment and discretion of the trial judge, we are unable to address the issue in this order. Accordingly, we recommend the plaintiffs' motion to compel be denied, without prejudice to them raising the spoliation issue in a subsequent motion.

The plaintiffs also request that we sanction the defendant under Rules 37 and 11. As to whether sanctions are appropriate under Rule 37, as stated above, our inquiry as to whether sanctions are appropriate focuses on: (1) whether there was a failure of discovery; and (2) whether the conduct of a party that is alleged to have failed in some discovery obligation was substantially justified.

The plaintiffs first argue that the defendant's behavior during discovery was dilatory and in bad faith entitling them to reasonable attorneys' fees and expenses. They assert that the defendant has generally mishandled the discovery process,

12

failing to adhere to 30-day deadlines for answering interrogatories, providing documents only after several requests and in an unorganized and informal way that caused them expenses beyond the expected amount of legal fees it should have taken to complete the discovery process. They acknowledge that the defendants asked several times what additional documents were needed, but do not believe it should have been necessary for them to spend time compiling lists of documents that were all readily apparent to the defendants. The defendants assert that they acted in good faith in providing the plaintiffs any documents they desired.

    Based on our review of the record and our discussions with the parties, aside from concerns regarding the alleged spoliation of some electronically stored evidence, we do not find there was a culpable failure of discovery. Although we can appreciate that the plaintiffs and their counsel are frustrated by the protracted nature of this important litigation, we do not find that the plaintiffs have demonstrated that the defendant engaged in sanctionable conduct as part of the discovery process. Although it may be that the defendant's written production was not made in strict accordance with the timing demands set forth by the plaintiffs in their discovery requests, the fact remains that the defendants were in relatively regular communication with the plaintiffs throughout the process and appear to have made a good faith effort to produce any and all documents requested by the plaintiffs. It is also apparent that they are still willing to engage in a dialogue about any missing

documentation, offering to provide a deposition by a member of their IT team to clarify any missing documentation from the portal. We commend this course to all counsel since it may well clarify whether some potentially culpable spoliation has occurred here. Although the plaintiffs may be justified in their assertion that certain evidence was improperly destroyed, as we have noted, this is an issue most properly addressed in a spoliation motion following further development of the factual record. On this score we note that: "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012).

Thus the party seeking a spoliation finding must also prove a culpable state of mind. In this respect:

> For the [spoliation] rule to apply ... it must appear that there has been an actual suppression or withholding of the evidence. *No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.* See generally 31A C.J.S. Evidence § 156(2); 29 Am. Jur. 2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent."). Brewer, 72 F.3d at 334 (emphasis added). Therefore, a finding of bad faith is pivotal to a spoliation determination. This only makes sense, since spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually

withheld, rather than—for instance—misplaced. *Withholding requires intent.* Bull, 665 F.3d at 79 (emphasis added and in original).

Prime Energy & Chem., LLC v. Tucker Arensberg, P.C., No. 2:18-CV-0345, 2020 WL 5653351, at *4 (W.D. Pa. Sept. 23, 2020), reconsideration denied, No. 2:18-CV-0345, 2021 WL 2401357 (W.D. Pa. June 11, 2021). In this case, at present, we cannot make such a determination of intentional withholding. Therefore, further development of the factual record, as proposed by the defendant, would be appropriate here.

We also do not believe that it has been shown that the defendant has engaged in conduct that warrants sanctions under Rule 11. The plaintiffs specifically assert that the defendant is subject to sanctions under Rule 11(b)(3) because certain factual contentions in its Motion for Summary Judgment do not have evidentiary support. The plaintiffs point to three assertions made by the defendant which it claims are directly contradicted by the evidence.

First, the defendant's Motion for Summary Judgment states that the plaintiffs did not approach the defendant for adoption until May of 2015, but the application date was October 7, 2014.[4] This imprecise statement of when the plaintiffs "approached" the defendant is immaterial and appears to be a typographical error.

---

[4] The defendants state that the actual date of the application was January 18, 2015, (Doc. 24, ¶ 10), further demonstrating the immateriality of the precise date of the application to the underlying claims.

Further, it does not specifically reference the date of the application; the defendants point out that it was referencing the beginning of the Home Study process, not the application date, an assertion that is supported by the evidence.

In support of its request for sanctions, the plaintiff next points to the defendant's assertion that the birthmother initially did not want to reveal the identity of the birthfather, an assertion supported by the progress note summary for the first appointment with the birth mother on March 19, 2015. (Doc. 67-4, at 1). Finally, the plaintiffs argue the defendant misleadingly asserted in paragraphs 4 and 5 of the concise Statement of Facts, (Doc. 47), that there was contact to plaintiffs made toward the end of May 2015 regarding the birth father when the plaintiffs had not matched with the birth mother until June 24, 2015. As the defendant points out, these statements are pulled directly from the plaintiff's deposition. (Doc. 48-1, at 62-63). And while the plaintiff contends this may not have been factual accurate, it is certainly based upon evidentiary support as the Statement of Facts cites directly to the plaintiff's own words.

After reviewing the three alleged misrepresentations described by the plaintiff, we cannot say these factual inconsistencies rise to the level of sanctionable behavior under Rule 11, as "[this] Court and others have interpreted its language to prescribe sanctions, including fees, only in the 'exceptional circumstance' . . . , where a claim or motion is patently unmeritorious or frivolous." Doering, 857 F.2d

at 194. While there is some question as to certain precise dates relevant to the overall factual narrative, many of these errors are understandable given the long procedural history in this case, inconsistencies in the evidentiary record, and the years since the events which form the basis of this litigation occurred. And, most importantly, the defendant has pointed us to parts of the evidentiary record which support its statements. Thus, we cannot say that this is an exceptional circumstance that would warrant sanctions against the defendants.

The record of communications between the parties demonstrates that the prolonged nature of discovery has been particularly frustrating to the plaintiffs given the great emotional significance of this case. We understand this concern and have recommended that this case be scheduled for trial on its merits. However, when considering requests for sanctions we are confined by the rules of this Court which presently do not warrant the imposition of sanctions under these circumstances. Since it appears the plaintiffs have now obtained everything they have requested, absent the communication which was destroyed and may be addressed in a spoliation motion, their best remedy is their continued zealous pursuit of damages at trial. Having reached these conclusions, the plaintiff's motion to compel and for sanctions will be denied, in part, and deferred, in part. Specifically, while we decline to order the production of evidence which all parties attest no longer exists, and deem a request for monetary sanctions to be premature, we recognize that some potentially

critical electronically stored evidence may not have been preserved by the defendants despite arguably having a legal duty to retain this information. Therefore, we will defer to the judgment of the trial judge regarding whether some form of spoliation jury instruction would be an appropriate sanction in this case.

    An appropriate order follows.


DATED: June 23, 2022.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN LITTLE and** | : | Civil No. 1:19-CV-1485 |
| **MICHELLE LITTLE,** | : | |
| | : | |
| Plaintiffs, | : | (Judge Wilson) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **BETHANY CHRISTIAN SERVICES,** | : | |
| | : | |
| Defendant. | : | |

## ORDER

AND NOW, this 23rd day of June 2022, in accordance with the accompanying Memorandum, IT IS ORDERED that the plaintiff's motion for sanctions and motion to compel, (Doc. 61) are DENIED in part, and deferred, in part. Specifically, while we decline to order the production of evidence which all parties attest no longer exists, and deem a request for monetary sanctions to be premature, we recognize that some potentially critical electronically stored evidence may not have been preserved by the defendants despite arguably having a legal duty to retain this information. Therefore, we will defer to the judgment of the trial judge regarding whether some form of spoliation jury instruction would be an appropriate sanction in this case.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

20